UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES SMALLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) )  Case No. 4:10CV319 RWS |
| MICHAEL GAMACHE, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

James Smalley alleges that defendants used excessive force against him in violation of 42 U.S.C. § 1983 while he was a pretrial detainee in the custody of the Sheriff's Department of the City of St. Louis on February 28, 2007. Defendants move for summary judgment on the ground that they are qualifiedly immune from suit. Smalley, who is proceeding pro se, opposes summary judgment, and the issues have been fully briefed. Because genuine issues of material fact remain as to whether defendants violated Smalley's constitutional rights, the motion for summary judgment will be denied.

Standards Governing Summary Judgment

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Fed.R.Civ.P. 56(c)(2)). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the movant does so, the

nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." Id. (internal quotation marks and citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000), (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson, 643 F.3d at 1042 (internal quotation marks and citations omitted) .

## Background Facts[1]

On February 28, 2007, Smalley was arrested and booked by the St. Louis Metropolitan Police Department and being housed in the St. Louis City Justice Center awaiting his first appearance in front of a judge.  Defendants Michael Gamache, Joseph Pree, and Chris Cavana were employed by the Sheriff's Department for the City of St. Louis and assigned to prisoner processing at the Justice Center.  They were responsible for searching and escorting pretrial detainees to the Carnahan Courthouse for initial appearance.  During his search of Smalley,

---

[1] I am finding these facts purposes of deciding this motion only, and neither party may rely on this Order to establish any facts or defenses at trial.

Cavana ordered Smalley to hand over his shoes. Smalley refused, so he was taken to a cell and placed inside "so that Pree and Cavana could peaceably search the remaining individuals and search [Smalley] last." (Doc. # 98-1 at 2). From here, Smalley's version of events differs from defendants'. According to Smalley, he "exchanged words" with Gamache before being placed in the cell because Gamache was "browbeating him" and "treating him harshly," but claims that "they were nothing but words." Smalley testified that, after he was placed in the cell, Gamache jumped up from his seat in the control room for no reason and bolted toward the cell while removing his can of mace. Smalley then claims that Gamache opened his cell door and maced him "directly in the face without warning or provocation." Smalley alleges that Gamache and Cavana then began beating and kicking him and that Pree arrived and maced him again. Smalley claims that, as a result of defendants' unprovoked attack, he sustained chemical burns, a fractured left rib, and knots on his chest and leg.

      According to defendants, Smalley began "mule-kicking" the cell door after he was placed inside. Because Gamache believed Smalley might injure himself or the cell door, Gamache opened the cell door to tell him to stop kicking the door. Defendants claim that Smalley then rushed Gamache and struck him in the face with a closed fist, so Gamache tried to restrain Smalley by taking him down to the ground. Defendants testified that Smalley actively resisted and continued attempting to strike Gamache, so Cavana ran to assist Gamache. Gamache and Cavana were able to wrestle Smalley to the ground, but Smalley continued to resist despite their verbal commands to the contrary. Pree then came to assist and administered "one or two bursts of oleoresin capsicum aerosol restraint spray to Smalley's face." Defendants claim that Smalley stopped resisting after being maced, so he was placed back in his cell. Defendants claim that

Smalley told St. Louis Metropolitan police officers that he was not injured as a result of this incident. Smalley denies mule-kicking his cell door, denies being an aggressor or striking Gamache, denies resisting any command (other than to take off his shoes), and denies telling anyone he was not injured as a result of the attack. There is no videotape of the incident. Smalley was charged with Assault 3rd Degree after an investigation of the incident by the St. Louis Police Department. However, defendants have provided me with no information regarding the disposition of this charge and do not argue for any preclusive effect arising from it.

## Discussion

Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir . 2005) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

To determine whether an official is entitled to qualified immunity, the Court asks the following two-part question: (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct. Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). The Court may decide which determination to make first, Pearson v. Callahan, 555 U.S. 223, 235–36 (2009), and "the defendants are entitled to qualified immunity unless the answer to

both of these questions is yes." McCaster v. Clausen, 684 F.3d 740, 746 (8th Cir. 2012).

"A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." Mathers v. Wright, 636 F.3d 396, 399 (8th Cir. 2011) (internal quotation marks and citation omitted). "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." Winslow v. Smith, 696 F.3d 716, 738 (8th Cir. 2012) (internal quotation marks and citation omitted). "The unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances." Nelson v. Correctional Medical Services, 583 F.3d 522, 531 (8th Cir. 2009) (internal quotation marks and citation omitted).

"To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established." Chambers v. Pennycook,  641 F.3d 898, 904 (8th Cir. 2011).  Turning first to the question of whether a constitutional right was violated, as a pretrial detainee Smalley's excessive force claim invokes the protections of the Fourth Amendment. Id. at 905.[2]  "An officer's use of force violates the Fourth Amendment when it is objectively unreasonable, given the facts and circumstances of the particular case, as judged from the perspective of a reasonable officer on the scene." Id. at 906 (internal quotation marks and citation omitted).  To determine whether the force used was

---

[2]This standard also applies to § 1983 excessive force claims brought against sheriff deputies. Mettler v. Whitledge, 165 F.3d 1197, 1202-03 (8th Cir. 1999).

reasonable requires a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. (internal quotation marks and citation omitted). An officer's use of force against a detainee who is not threatening, resisting orders, or disturbing the safety and security of the institution is not objectively reasonable. See, Atkinson v. City of Mountain View, Missouri, 2013 WL 462381, at *6 (8th Cir. Feb. 8, 2013); Shannon v. Koehler, 616 F.3d 855, 864-65 (8th Cir. 2010).

Viewing the facts most favorably to Smalley and giving him the benefit of all reasonable inferences, a reasonable jury could conclude that Smalley was in compliance with defendants' orders and posed no threat to the safety and security of the institution when he was maced and beaten. If Smalley's version of events is to be believed, the only order he refused to comply with was the one to remove his shoes. However, any disruption or potential security threat caused by that lack of compliance was over by the time he was placed in the cell. According to Smalley, he was compliant when placed in the cell, did not kick his cell door, and did not rush out of the cell and strike Gamache when Gamache opened the door and maced him without provocation. Smalley insists that he did not refuse any orders after he was maced, that he was not fighting with Gamache and Cavana, and that he was not resisting when Pree repeatedly maced him. Accepting this version of facts, which is not blatantly contradicted by the record, Scott v. Harris, 550 U.S. 372, 380 (2007), then any use of force against Smalley would be gratuitous and a violation of the Fourth Amendment. See, Graham v. Connor, 490 U.S. 386, 396 (1989) (officer's use of force violates Fourth Amendment when it is objectively unreasonable given facts and circumstances of particular case); Hemphill v. Hale, 677 F.3d 799, 801 (8th Cir. 2012); Henderson, 439 F.3d at 502-03 (qualified immunity denied because officer's use of pepper spray on arrestee who had

already been subdued and restrained may have been gratuitous and completely unnecessary act of violence that violated Fourth Amendment). Because Smalley has raised a genuine issue of material fact about whether defendants violated a constitutional right, defendants' motion for summary judgment on the basis of qualified immunity must be denied.

With respect to the second prong of the qualified immunity analysis, defendants correctly note that at the time of these events, the Eighth Circuit Court of Appeals had not yet resolved the question of whether a plaintiff who demonstrates only a de minimis injury may nonetheless establish a Fourth Amendment violation based upon excessive use of force. Chambers, 641 F.3d at 906. However, this argument does not entitle defendants to qualified immunity here because the extent of a plaintiff's injury is not relevant if the use of force was gratuitous. Hemphill, 677 F.3d 799 at 801; Smith v. Appledorn, 2013 WL 451320, at *5 (D. Minn. Feb. 6, 2013) (any use of force to seize an injured, compliant, non-resistant person is unreasonable). The constitutional right to be free of gratuitous force was clearly established as of February 28, 2007. See Shannon, 616 F.3d at 864-65 ("Long before September 13, 2006, this court (among others) had announced that the use of force against a suspect who was not threatening and not resisting may be unlawful."); Bauer v. Norris, 713 F.2d 408, 412 (8th Cir. 1983); Feemster v. Dehntjer, 661 F.2d 87, 89 (8th Cir. 1981) ("There is no occasion for the use of any force against a prisoner who quietly submits."); Agee v. Hickman, 490 F.2d 210, 212 (8th Cir. 1974) ("[T]he use of any force by officers simply because a suspect is argumentative, contentious, or vituperative is not to be condoned."); cf. United States v. Harrison, 671 F.2d 1159, 1161 (8th Cir. 1982) ("Even if [suspect's] injuries were minor, a lack of provocation or need to use force would make any use of force excessive."). A reasonable officer in 2007 would have known that it would be

unreasonable to use any amount of force on a pretrial detainee who was compliant and posed no threat to the safety and security of the officers and the institution.

Moreover, as the Eighth Circuit held in <u>Henderson</u> when affirming the district court's denial of qualified immunity in a Fourth Amendment excessive force case:

> [W]e agree with the district court that genuine issues of material fact exist as to whether a reasonable officer . . . would have known his actions violated [plaintiff's] right to be free from excessive force.  We need look no further than both parties' sharply conflicting accounts of the circumstances surrounding [plaintiff's] arrest to find a material factual dispute.  [Plaintiff] alleged that he was not resisting arrest when [defendant] hit [plaintiff's] leg with a heavy object and then sprayed [plaintiff's] face with pepper spray.  [Defendant], however, argues he acted reasonably under the circumstances given [plaintiff's] refusal to cooperate with the officers and [plaintiff's] resistance to the officers' efforts to arrest him.  As the district court noted, the record does not conclusively establish the reasonableness of [defendant's] actions or beliefs.  While the jury may credit [defendant's] testimony and disbelieve [plaintiff's] testimony at trial, it is not our function to remove the credibility assessment from the jury.  Thus, the district court properly denied [defendant's] motion for summary judgment on the basis of qualified immunity.

439 F.3d at 503-04 (internal quotation marks and citation omitted).  Here, too, there are sharply conflicting accounts of the circumstances surrounding defendants' use of force against Smalley.  While a jury may well credit defendants' version of events and disbelieve Smalley's testimony at trial, it is not my function to remove this credibility assessment from the jury.  <u>Id.</u> at 504.  Because there are material facts that remain in dispute, I must deny defendants' motion for summary judgment on qualified immunity grounds.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#98] is denied.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 19th day of March, 2013.